# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MARCIA R. POLK, individually and on behalf of others similarly situated, | ) ) ) |
| Plaintiff | ) ) |
| | ) **FLSA COLLECTIVE ACTION** |
| | ) **COMPLAINT UNDER** |
| | ) **29 USC § 216(b)** |
| | ) |
| vs. | ) CASE NO. 1:19-cv-4529 |
| | ) |
| SSCP PROPERTY MANAGEMENT, LLC d/b/a SNAPBOX STORAGE, | ) ) ) |
| Defendant | ) |

### *PLAINTIFF'S COLLECTIVE ACTION COMPLAINT FOR DAMAGES*

### *I. INTRODUCTION*

Plaintiff Marcia R. Polk ("Polk") brings this collective action lawsuit against Defendant SSCP Property Management, LLC d/b/a Snapbox Storage ("Snapbox") to address class-wide overtime violations committed by Snapbox against its hourly paid employees who were also paid earned wages in a category Snapbox called "Commission" on pay stubs. Polk will serve as the representative plaintiff in the FLSA collective action.

Specifically, Snapbox is and has been underpaying overtime compensation to its hourly-paid property managers and employees on a systematic, class-wide basis as a result of an unlawful practice by which Snapbox is failing to include all of its employees' earned wages in its calculation of employees' regular rates of pay and, in so doing, is failing to include all earned wages in its calculation of its employees' overtime rate of pay. All hourly-paid employees who earned "Commission" were and are being similarly subjected to Snapbox's unlawful

compensation scheme.  To explain generally, Polk and all similarly situated employees who manage Snapbox storage facilities around the country regularly earn a portion of their wages through payment of a "Commission," which is earned through sale of insurance products, merchandise (e.g., boxes, locks) and occupancy goals (e.g., rental of storage units).  The "Commission" is an earned wage paid on a regular basis.  The "Commission" is in no way gratuitous or discretionary.  Snapbox is paying overtime compensation to hourly paid property managers, but it is paying overtime only a rate equal to one and one-half times the property managers' base rate of pay.  It is not including the earned wages it call "Commission" in the calculation of property managers' regular rate of pay and it is not including the "Commission" wages in the calculation and payment of overtime paid to property managers.  This class-wide and systematic failure and refusal to include the earned "Commission" wages in the calculation of property managers' regular rate of pay violates the Fair Labor Standards Act ("FLSA") and result in class-wide underpayment of overtime compensation.

      Polk's collective action claims based upon Snapbox's failure to include earned wages it calls "Commission" in the calculation of regular rates of pay and overtime rates of pay will be perfect for collective action treatment and will be easy to prove.  All of Snapbox's overtime violations will be shown on the face of pay stubs Snapbox issues to its employees who work as property managers.

## II.  FACTUAL ALLEGATIONS

    1.      Polk is a resident of the State of Indiana and is domiciled in Carmel, Hamilton County, Indiana.  Polk was hired by Snapbox in December 2017 to work for it as a property manager of Snapbox's Mill Creek storage facility in Noblesville, Indiana.  Snapbox involuntarily

terminated Polk's employment on October 27, 2019 based upon Polk's disability and health problems.  At all times during her employment with Snapbox, Polk was paid wages on an hourly basis and treated as a non-exempt employee.

2. Snapbox is headquartered in Philadelphia, Pennsylvania.  Based upon its website, Snapbox owns and/or operates storage facilities in at least ten states - Indiana, New Jersey, Pennsylvania, Maryland, Washington, Mississippi, Florida, Texas, Tennessee and Arkansas

3. Polk and all similarly situated coworkers, worked for Snapbox as storage property managers.  Based upon internet research, information and belief, Snapbox owns and operates at least thirty to forty different storage facilities around the United States.

4. Throughout her employment with Snapbox, Polk was a non-exempt employee who was compensated by Snapbox on an hourly-paid basis.  At the time of her termination, Polk's base rate of pay was $18.00 per hour.  During her employment with Snapbox, Polk regularly worked significant overtime hours (in excess of forty hours in a seven day work week).  When Snapbox paid Polk overtime compensation, it only compensated her overtime pay at a rate which was one and one-half her <u>base</u> rate of pay.  Snapbox failed, however, to compensate Polk for her overtime work at a rate that was one and one-half times her full, <u>regular</u> rate of pay and, in doing so, Snapbox violated the FLSA.

5. Polk regularly earned and was paid a portion of her wages in a pay roll category Snapbox called "Commission" on pay stubs.  This "Commission" category of pay was earned by Polk through sale of insurance products, merchandise (e.g., boxes, locks) and occupancy goals (e.g., rental of storage units).  The "Commission" is an earned wage paid on a regular basis.  The "Commission" is in no way gratuitous or discretionary.  In all weeks in which Polk worked

overtime hours (hours in excess of forty hours in a seven day work week) and also earned wages in Snapbox's "Commission" category, Snapbox failed and refused to include the "Commission" wage in its calculation of Polk's regular rate of pay and, in so doing, violated the FLSA by failing to include Polk's full regular rate of pay in its calculation of Polk's overtime rate of pay and in its payment of Polk's fully earned overtime compensation.

6. During every pay period in which Polk worked and was owed overtime compensation, her pay stubs show that Snapbox only paid her at an overtime rate equal to one and one-half times her regular, base rate of pay.

7. Polk can provide a specific example. During the two week pay period from July 29, 2019 to August 11, 2019, Polk worked a total of 85.91 hours and 5.91 of those hours were treated as overtime hours. Snapbox also paid Polk a "Commission" of $500.00 that pay period. In total, Snapbox paid Polk gross wages of $2,099.57 for her two week pay period from July 29, 2019 to August 11, 2019.

Polk's pay stub itself shows that Snapbox paid Polk at her $18.00 per hour base rate of pay for 80.0 "regular" hours. Snapbox paid Polk at $27.00 per hour - an amount equal only to one and one-half her $18.00 per hour base rate of pay - for 5.91 overtime hours. Snapbox did not include the $500.00 earned "Commission" wages in the regular rate or the overtime rate calculation and did not pay Polk any overtime compensation based upon this "Commission" wage. To properly calculate Polk's regular rate of pay for the two week pay period by including these earned wages called simply "Commission," Snapbox had to divide the $500.00 "Commission" wages by the total reported hours of work - 85.91 - for the two week period. That results in an additional $5.82 per hour and made her regular rate for the pay period $23.82 per

hour.  In turn, that inclusion of the "Commission" wages for Polk's 5.91 overtime hours meant that Snapbox owed Polk her overtime compensation at the rate of $35.73 per hour.   For this pay period from July 29, 2019 to August 11, 2019, Polk should have been paid gross wages of at least $2,151.16 (80.0 hours at $18.00 per hour + 5.91 overtime hours at $35.73 + $500.00 "Commission" wages).  In just this one pay period, Snapbox's failure to properly calculate and pay Polk her earned overtime compensation resulted in an underpayment of $51.59.

Snapbox committed this same FLSA overtime violation through failure to properly calculate overtime compensation in many pay periods worked by Polk over an approximately two year period.

8. Snapbox is similarly underpaying overtime compensation to all of Polk's similarly situated hourly paid property managers by failing to pay overtime hours worked at full overtime rates of pay - one and one-half times the full regular rate of pay.  Snapbox is systematically committing this overtime violation by failing to include regularly paid, earned wages it is calling "Commission" in the regular rate of pay and by also failing to pay overtime hours of work at an overtime rate of pay at all (it is paying property managers' hours in excess of 40.0 in a work week at a base rate of pay).

9. Snapbox has created a policy and practice whereby it significantly underpays property manager overtime compensation by failing to properly include "Commission" wages and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA.

10. Based upon its long-standing policy and practice of improperly calculating overtime compensation, Snapbox has been systematically underpaying its property managers

significant sums of overtime wages on a weekly basis. The aggregate sum of unpaid overtime for all property managers is very substantial on a weekly and on an annual basis.

11.     Based upon information and belief, particularly when including employee turnover, Polk estimates that Snapbox applied its unlawful method of calculating and paying property managers for overtime hours of work in a manner that affects one hundred or more property managers over a three year period.

12.     Snapbox has intentionally, knowingly, with reckless disregard and systematically violated its property managers' rights to earned overtime through Snapbox's unlawful overtime calculation and payment policies.

### III.  COLLECTIVE ACTION ALLEGATIONS

13.     Polk incorporates herein by reference paragraphs 1 - 12 above.

14.     This Complaint is brought as a collective action under the FLSA on behalf of Polk and other current and former Snapbox hourly-paid property managers who were similarly denied payment of wages and overtime compensation under Snapbox's compensation scheme that involved the improper calculation of regular rates of pay needed to properly calculate overtime rates of pay and the underpayment of overtime compensation.

15.     This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Polk and all Snapbox current and former hourly-paid property managers who were damaged by Snapbox's compensation system which required and resulted in unpaid or underpaid overtime work. By virtue of the "collective action," Polk represents the identical and/or similar interests of former and current hourly-paid property managers denied full overtime compensation under the same circumstance. Polk anticipates that

other Snapbox employees and former employees will opt in to the action.

16. The number of Snapbox current and former employees who will be members of this collective action is so great that joinder of all members is impractical. Instead, Polk will pursue discovery to obtain the names of the other current and former Snapbox property managers, to provide notice of the collective action, and to offer the opt-in opportunity.

17. Particularly with the types of overtime wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group.

18. Polk's claims are typical of the claims of the whole collective group of current and former hourly-paid property managers harmed by Snapbox's illegal overtime calculation and payment practices.

19. Polk will act to fairly and adequately protect the interests of the entire collective group of current and former Snapbox property managers.

20. A collective action is superior to other available means for the fair and efficient prosecution of these wage claims against Snapbox. For example, to prove Snapbox's illegal overtime practices, Polk and other members of this collective group would seek in discovery records about all similarly situated current and former Snapbox property managers who were similarly denied earned overtime compensation. Individual lawsuits by the members of the collective group could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

21. A determination regarding the "similarness" of those able to participate in the collective action would also allow litigation of claims that may not otherwise be cost effective,

depending upon the amount of each individual group member's damages. Particularly with the type of FLSA wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

22. A collective action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

### IV.  JURISDICTION AND VENUE

23. This Court has jurisdiction over Polk's FLSA claims under 28 USC § 1331 as those FLSA claims raise a question of federal law.  See 29 USC § 201 et seq.

24. This Court is the appropriate venue for this cause of action as Polk worked for Snapbox in Hamilton County, Indiana and much of the illegal activity took place in the Southern District of Indiana.  28 USC § 1391.

### V.  STATEMENT OF CLAIMS

#### A.  *Fair Labor Standards Act Claims*

25. Polk incorporates herein by reference paragraphs 1 through 24 above.

26. Snapbox is an "enterprise" as that term is defined by the FLSA, and Snapbox is covered by the overtime and minimum wage provisions of the FLSA.  Snapbox is an "employer," as that term is defined by the FLSA.  Finally, Snapbox is a "person" as that term is defined by the FLSA.

27. Snapbox committed overtime violations under the FLSA against Polk and all

similarly situated property managers, as earned, regularly paid "Commission" amounts should have been included in employees' regular rates of pay and included in any calculation of overtime compensation due to Polk and each and every similarly situated class member in each and every week in which both overtime compensation and "Commission" were owed.

28. Because it failed to include earned "Commission" wages in its calculation of overtime compensation, Snapbox failed to pay Polk and each and every similarly situated property manager at the full and correct overtime rate of pay, as required by the FLSA, in any and all calendar weeks in which Polk and every similarly situated property manager worked in excess of forty (40) hours.

29. Additionally, Snapbox has repeatedly violated the FLSA's overtime provisions by failing to pay Polk and each similarly situated property manager at overtime rates of pay for every overtime hour worked.

30. Snapbox's failure to comply with the FLSA's provisions regarding overtime compensation has been willful and without justification, and subjects Snapbox to a three year statute of limitations.

31. Polk and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Snapbox's violations of their rights under the Fair Labor Standards Act.

## VI.  PRAYER FOR RELIEF

WHEREFORE, Polk respectfully requests that the Court enter judgment against Snapbox and issue all available relief to her and to all eligible members of the Plaintiff Class, including,

but not limited to, the following:

1. All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All unpaid and underpaid wages;

3. All reasonable attorney's fees and expenses;

4. Costs;

5. Prejudgment interest, if available; and

6. Any and all other relief just and proper in the premises.

Respectfully submitted,

HASSLER KONDRAS MILLER LLP

By/s/Robert P. Kondras, Jr.
Robert P. Kondras, Jr.
Attorney No. 18038-84
100 Cherry Street
Terre Haute, IN 47807
(812) 232-9691
Facsimile: (812) 234-2881
kondras@hkmlawfirm.com